UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 19-20497-CR-GAYLES

**UNITED STATES OF AMERICA,**
 **Plaintiff,**

vs.

**SHAROD WILLIAM HOLLIE,**
 **Defendant.**
            /

## MR. HOLLIE'S RESPONSE TO THE GOVERNMENT'S MOTIONS *IN LIMINE* (DE 65 AND 66)

Sharod Hollie, through undersigned counsel, respectfully files this response to the government's motions *in limine*. Following a calendar call and a status conference, at which the Court addressed Mr. Hollie's motions *in limine*, the government filed a motion *in limine* to preclude the defense from introducing evidence of his mental health condition at trial, (DE 65), and a motion *in limine* to admit witness testimony and letters written by Mr. Hollie. (DE 66). The government cannot have it both ways—it cannot both admit extrinsic evidence of Mr. Hollie's state of mind and preclude Mr. Hollie from refuting that evidence. In response to the government's motions, Mr. Hollie states:

1. **The Government Has Received Overwhelming Evidence of Mr. Hollie's Mental Health Condition**

Contrary to the government's claim that the defense has "provided no reciprocal discovery in this case, let alone any reports (expert or otherwise) that would support the introduction of evidence regarding the defendant's mental health

1

condition," overwhelming evidence has been provided to the government regarding Mr. Hollie's mental condition before, during, and after his 2014 plea; and on the dates of the incidents alleged in the indictment. Specifically, On November 12, 2021, undersigned provided to the government the following evidence documenting Mr. Hollie's mental health:

- A petition made by the Department of Children and Families in 2013 (while Mr. Hollie was committed to its custody) for an order authorizing forced treatment of Mr. Hollie based on the opinions of two mental health professionals from the South Florida Evaluation and Treatment Center.
- Mr. Hollie's records from the South Florida Evaluation and Treatment Center, where Mr. Hollie was committed for most of 2010 to 2014.
- An order confirming involuntary treatment following an attached report and recommendation by a magistrate, after an evidentiary hearing in 2013, recommending that the court order Mr. Hollie medicated without his consent due to his diagnosed schizophrenia.
- An order signed by Judge Teresa Pooler that Mr. Hollie be held in a treatment facility pursuant to *Brantly v. Rubio*, 870 So.2d 849 (3d DCA 2003), pending the resolution of his case.
- An order to transport Mr. Hollie from the South Florida Evaluation and Treatment Center directly to his court hearing on the date of his change of plea.
- Orders of supervision that required Mr. Hollie be housed at a residential mental health program for a year following his 2014 change of plea.
- A 2016 order signed by Judge Teresa Pooler, again committing Mr. Hollie to the Department of Children and Families to be housed in a security residential facility for the mentally ill, along with an order signed by Judge Teresa Pooler finding Mr. Hollie incompetent in 2016.

In addition, the government is in possession of evaluations, conducted by the Bureau of Prisons, which also document Mr. Hollie's mental health following the offenses alleged in this case:

- A report from May 28, 2020, opining that Mr. Hollie suffers from a severe mental health disorder and is not competent to proceed.
- A report from March 3, 2021, opining that Mr. Hollie is suffering from schizophrenia and is not competent to proceed.

Therefore, as an initial matter, the government is very much on notice of Mr. Hollie's mental health condition.

To confirm undersigned's previous representation in Court, Mr. Hollie does not intend to assert an insanity defense and Mr. Hollie does not intend to introduce expert reports. Therefore, the defense has not and will not provide notice under Federal Rules of Criminal Procedure 12.2. Moreover, also as represented in Court, the defense agrees as a general matter that diminished capacity is not a defense to a general intent crime under current Eleventh Circuit law.

However, as detailed below, in light of the government's intent to introduce the habit testimony of Judge Teresa Pooler, its intent to introduce a letter written by Mr. Hollie from the South Florida Evaluation and Treatment Center to show his "state of mind," and its intent to elicit testimony from employees of the gun store about Mr. Hollie's state of mind on the day of the alleged offenses, the government is now opening the door to Mr. Hollie's mental health. While the defense agrees that a "diminished capacity" affirmative defense is not applicable, if the Court allows the government to put on this state-of-mind evidence, then Mr. Hollie must be able to cross-examine and refute that evidence.

**2. The Habit Testimony of Judge Teresa Pooler**

The government now seeks to introduce the testimony of Judge Teresa Pooler as habit evidence under Federal Rule of Evidence 406. The government should not be

3

permitted to use habit evidence to prove an essential element of the crimes charged. Further, the defense would only be able to refute the evidence of Judge Pooler's habit by showing why Mr. Hollie's change of plea may have been outside of her normal routine or habit—namely, because of Mr. Hollie's mental illness and mental health history. At the government's urging, the Court has already precluded this evidence. In other words, the defense's hands would be tied by the Court's prior ruling. Thus, the Court should not permit Judge Pooler to testify pursuant to Fed. R. Evid. 406. If the Court does allow this habit testimony, then, at a minimum, it must also allow the defense to contest the testimony with questions and evidence of Mr. Hollie's mental health. The government cannot have it both ways.

The caselaw cited by the government does not support their own position. The two criminal cases cited by the government are in entirely different postures than the current case. In both *United States v. Elmore*, 2017 WL 9473400, at *1 (M.D. Ala. Nov. 2, 2017), and *United States v. Cashwell*, 950 F.2d 699, 704 (11th Cir. 1992), the issue was whether a court could rely on habit evidence to reconstruct a transcript of its own plea colloquy. Neither of these cases considered whether the government could use habit evidence to prove an essential element of a crime. Here, the government seeks to introduce Judge Pooler's habit to prove the *mens rea* element of the charged offenses. The Eleventh Circuit has never affirmatively approved of this use of habit evidence. In fact, the Eleventh Circuit has cautioned that habit "is never to be lightly established, and evidence of example, for purpose of establishing such habit, is to be carefully scrutinized before admission." *United States v. Copeland*, 662

F. App'x 750 (11th Cir. 2016) (*citing Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985)). Mr. Hollie's actual knowledge on the day he took his plea is relevant; Judge Pooler's habits on any other day are not.

Additionally, as noted above, the Court has already precluded the introduction of evidence or testimony about Mr. Hollie's mental health history, tying the hands of the defense. At a status conference, this Court already indicated that mental health evidence would not be admissible. Now the government seeks to introduce evidence that can only be rebutted with the use of mental health evidence. The government seeks to elicit testimony to establish of Judge Pooler's habits during a plea colloquy. To rebut this testimony, Mr. Hollie would need to show why this plea colloquy might be different than her habitualized plea colloquies. This plea colloquy was different because of Mr. Hollie's mental health: he had been incompetent for nearly four years; he was committed to a mental health facility at the time of the plea; the court later found Mr. Hollie incompetent to proceed again. All of these factors counter the habit testimony. Because the Court has already excluded Mr. Hollie's mental health history, the Court should not allow the habit testimony of Judge Pooler.

Should the Court allow the habit testimony of Judge Pooler, then the Court must also allow the defense to cross-examine Judge Pooler and enter evidence that tends to show why Mr. Hollie's change of plea could have fallen outside the scope of Judge Pooler's habits.

3. **The Letter from Mr. Hollie**

Despite the Court's previous ruling, the government seeks to admit a letter

5

written by Mr. Hollie to the "county of clerks" while he was confined at the South Florida Evaluation and Treatment Center and still in the custody of the Department of Children and Families. The Court should affirm its previous ruling that the letter is inadmissible because Mr. Hollie was still considered incompetent by the Court at the time the letter was written; and again, because the admission of the letter opens the door to the circumstances under which the letter was written, including Mr. Hollie's mental health status.

The letter written by Mr. Hollie is postmarked on December 12, 2017, while Mr. Hollie was committed to the Department of Children and Families and in a residential mental health facility due to his incompetence. There is no evidence of when the letter was actually written. Although the government argues that Mr. Hollie was evaluated on December 6, 2017, he was not found competent to proceed under December 22, 2017. Additionally, even after the order of competence, the court entered an order continuing Mr. Hollie's commitment pursuant to *Brantly v. Rubio*, 870 So.2d 849 (3d DCA 2003), pending the resolution of his case, because his competence was so unstable.

The government cites *United States v. Meagher*, 531 F.2d 752, 754 (5th Cir. 1976), *abrogated on other grounds by Jaffee v. Remond*, 116 U.S. 1923 (1996). However, in *Meagher*, letters from the defendant were used to disprove an insanity defense. Not only is there no insanity defense, but the Court has also precluded mental health evidence, rendering *Meagher* completely inapplicable here.

The letter from Mr. Hollie should be excluded. However, if the Court is inclined

6

to allow the letter, Mr. Hollie must be allowed to respond by introducing the circumstances of the letter. The letter makes relevant Mr. Hollie's mental health at the time it was written, his restoration classes, his ongoing battle with competency, and his commitment. If the Court allows the letter to be introduced, the government will open the door to the entirety of Mr. Hollie's mental health and the defense will seek to admit all of the evidence provided to the government.

**4. Testimony by the Store Employees**

The government seeks to exclude Mr. Hollie from eliciting testimony from store employees that Mr. Hollie was mumbling to himself or that he stayed inside one of the stores after he was not approved. This evidence would only be elicited to rebut the testimony from store employees about Mr. Hollie's state of mind on the dates of the offenses. For example, the defense anticipates that the government will ask the store employees whether Mr. Hollie filled out the ATF forms without assistance. This evidence is only relevant to show Mr. Hollie's state of mind on the dates of the offenses. As a result, other observed behaviors are also relevant. The employees are not testifying as experts or offering any opinion regarding mental health. If the government elicits testimony about their observations of Mr. Hollie's behaviors, the defense must be allowed to do the same.

In conclusion, the government cannot have it both ways: it cannot exclude all evidence of Mr. Hollie's mental health; and then seek to admit testimony and evidence about Mr. Hollie's "state of mind" that can only be rebutted with mental health evidence. This Court should affirm its previous ruling, prohibiting both the

government and the defense from discussing Mr. Hollie's mental health. In doing so, the Court must also exclude the testimony of Judge Pooler and the letter written by Mr. Hollie.

        Respectfully submitted,

        **MICHAEL CARUSO**
        **FEDERAL PUBLIC DEFENDER**

By:   /s/ *Lauren Field Krasnoff*
      Lauren Field Krasnoff
      Assistant Federal Public Defender
      Florida Bar No.: 86951
      150 W. Flagler Street, Suite 1700
      Miami, Florida 33130-1556
      Tel: (305) 533-4255
      Fax: (305) 536-4559
      E-mail: lauren_krasnoff@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on February 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      /s/ *Lauren Field Krasnoff*