UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-20497-CR-GAYLES

UNITED STATES OF AMERICA,

v.

SHAROD WILLIAM HOLLIE.

_____/

## NON-PARTY JUDGE TERESA POOLER'S EXPEDITED MOTION TO QUASH SUBPOENA

Non-party the Honorable Theresa Pooler, a Circuit Court Judge sitting in the Eleventh Judicial Circuit, through undersigned counsel, asks that the Court quash the subpoena issued to her by the United States on February 18, 2022, for testimony in this case regarding her acceptance of a nolo contendre plea from the Defendant in July 2014. Judge Pooler seeks this relief on an expedited basis, pursuant to Local Rule 7.1(d)(2), S.D. Fla. L.R., because the deadline for compliance with the subpoena is February 23, 2022. Judge Pooler also seeks this relief on an expedited basis because the United States filed a Motion in Limine (ECF No. 66) yesterday seeking to admit Judge Pooler's testimony, despite having been advised the day before that Judge Pooler would be filing a motion to quash the subpoena, and Judge Pooler seeks a ruling on this Motion to Quash before the Court rules on the Motion in Limine.

## BACKGROUND

Judge Pooler has been subpoenaed by the United States as a witness for the trial of this case. A copy of the subpoena is attached as Exhibit A. Judge Pooler was

1

the presiding judge for the purpose of accepting a nolo contendere plea in July 2014 in *State v. Sharod Hollie*, Case No. F10-002497. The United States has a certified copy of the Judgment and Conviction related to Case No. F10-002497, entered in 2014 subsequent to acceptance of Defendant's plea. (ECF No. 58, referring to Gov. Exh. No. 2).

The Office of the Attorney General, which represents state judicial officers, was retained on Friday, February 18, 2022, and undersigned counsel contacted Assistant United States Attorney Klepach at 12:53 pm seeking a draft of the proffer of Judge Pooler's testimony that was to be presented to this Court so that the undersigned could "get a response to you more promptly" and asking if it would be acceptable for the United States to wait until Monday morning (Feb. 21) to file its intended motion in limine.[1] AUSA Klepach advised that she would send the requested information and asked that undersigned provide approval that day. During a subsequent telephone call on February 18th between the undersigned and AUSA Klepach, who was later joined by AUSA Daniel Bernstein, the undersigned advised the United States again that Judge Pooler had no specific recollection of the proceeding and that a motion to quash the subpoena (which had just been received that afternoon) was being considered.[2]

---

[1] A copy of the undersigned's email correspondence referenced above and throughout this Motion is available upon the Court's request.

[2] When the United States first contacted the state court earlier this month, before the undersigned's office was retained, to ask if Judge Pooler recalled presiding over the plea proceedings in July 2014, the United States was informed that Judge Pooler had no recollection of this specific proceeding.

At 3:54 pm on Saturday, Feb. 19, 2022, AUSA Klepach asked the undersigned to confirm what Judge Pooler would testify to and provided the undersigned with a copy of an email AUSA Klepach had sent the night before with what was described as "some of the content of Judge Pooler's proposed testimony." (AUSA Klepach's message sent at 5:43 pm on Friday, Feb. 18, was rejected by the mail server for the Attorney General's Office due to its size.) At 8:44 pm on Saturday, Feb. 19, undersigned counsel advised counsel for the United States, in writing, that based on the information provided by the United States that "we plan to file a motion to quash the subpoena to Judge Pooler."

The United States listed these topics for the proposed testimony of the Judge:

- her usual plea colloquy practice in felony pleas;

- the effect of a no-contest plea;

- the difference between misdemeanor and felony offenses;

- that her standard plea colloquy is scripted;

- that her plea colloquy script includes advising defendants of the nature of the charges, the potential sentencing exposure, the defendant's state of mind at the time of the plea, the terms of the plea offer, and the factual basis for the plea, <u>among other information</u>;

- that in cases where the defendant is pleading guilty to a felony, defendants are advised that they are doing so;

- in cases where a defendant is sentenced to probation, the Judge explains what probation violations are and their potential effect on the defendant's exposure to incarceration; and

- that Judge Pooler presided over the plea colloquy that resulted in Defendant Hollie being adjudicated a convicted felon, although she has no independent memory of this defendant.

In the Motion in Limine, the United States added to the topics above by stating that they will seek to elicit testimony from Judge Pooler that she advises defendants "that the charge is a felony." Motion (ECF No. 66), at 4.

Although in an initial conversation with AUSA Klepach on Friday morning, February 18th, Judge Pooler indicated a willingness to testify as to whether she used a script for conducting a plea colloquy and what that script might cover generally, she did so before consulting with the Attorney General's Office. At no time after that initial conversation, and at no time after service of the subpoena on Judge Pooler did she agree to testify to the list of topics described by the United States and she no longer agrees to testify as to any aspect of this matter.

## ANALYSIS

Pursuant to Rule 17(c)(2), Fed. R. Crim. P., this Court may quash a subpoena if compliance with that subpoena would be unreasonable or oppressive. Compliance with the subpoena issued to Judge Pooler would be unreasonable for at least three reasons. First, Judge Pooler is being asked to recall her practices from more than 7 years ago, when she has informed the United States that she has no specific recollection of the brief plea colloquy proceeding involving the Defendant. Second, the United States plans to ask Judge Pooler to describe legal aspects of plea proceedings, generally, *e.g.*, "the difference between misdemeanor and felony offenses," which are topics for which she is not the only possible source and also could be construed as an area that is this Court's sole province in instructing a jury. Third, there is a high risk that in answering such questions posed by the United States (or the Defendant's

attorney), the Judge's thought process about her decision to accept Defendant's plea would be revealed, and that is unreasonable because it is contrary to established precedent. Compliance with the subpoena also would be oppressive because it will interfere with Judge Pooler's judicial duties, particularly because this week she is assigned to handle warrants and also has a full court calendar. Exh. B (Declaration of Judge Pooler), ¶ 5.

For more than a century it has been the rule that judges cannot be compelled to discuss their decision-making, particularly when it involves a matter presided over years ago, or where there are other sources for the requested information. The Supreme Court, in *Fayerweather v. Ritch*, 195 U.S. 276, 307 (1904), held that the testimony of a trial judge six years after a case was disposed of:

> in respect to the matters [the judge] considered and passed upon, was obviously incompetent…. [N]o testimony should be received except of open and tangible facts,-matters which are susceptible of evidence on both sides. A judgment is a solemn record. Parties have a right to rely upon it…. It ought never to be overthrown or limited by the oral testimony of a judge … of what he had in mind at the time of the decision.

*Id.*, at 306.

Although the request by the United States is framed in terms of Judge Pooler's "routine" practice, the standard practice in a court may be different today than it was more than 7 years ago. Exh. B (Declaration of Judge Pooler), ¶7. Moreover, as noted above, the extensive list of topics provided by the United States includes topics that at least arguably could lead to Judge Pooler testifying about the basis for her accepting the plea of this Defendant, or at least could allow the jury to believe that her testimony was directed to what she did regarding <u>this</u> Defendant, and that is

improper. For example, the United States seeks to ask Judge Pooler about "the defendant's state of mind at the time of the plea" or that in her plea colloquy she explains "the potential effect [of a probation violation] on the defendant's exposure to incarceration," and such topics clearly are directed to what occurred regarding this Defendant.[3]

"[J]udges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed." *United States v. Cross*, 516 F. Supp. 700, 707 (M.D. Ga. 1981), aff'd 742 F.2d 1279 (11th Cir. 1984). "[T]he overwhelming authority from the federal courts in this country ... makes it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties.*" United States v. Roth*, 332 F. Supp. 2d 565, 567-68 (S.D.N.Y. 2004) (citations omitted. In *Roth*, the defendants in a criminal case sought the testimony of a state court judge who had accepted a plea in a related case. Although the subpoena in *Roth* was issued by defense counsel and not the prosecution, the case is similar to the present case because it was a party seeking to learn what transpired in the courtroom during a plea proceeding, and that party expanded the inquiry to include the presiding judge's mental processes in accepting the plea. *Id.*, at 567. The District Court granted the

---

[3]It appears, according to another motion filed by the United States, that Defendant may intend to attack his plea entered before Judge Pooler based on alleged incompetency at that time. *See* Motion in Limine to Preclude Defendant from Introducing Evidence of Mental Health Condition (ECF No. 65), at 6. This is yet another reason counseling against Judge Pooler's testimony.

state attorney general's request to quash the subpoena, noting that there is a presumption against judicial testimony and finding that the judge's mental process "may not be scrutinized by requiring the judge to testify." *Id.*, at 570.

A court's judgment or order should not be subject to later review, even inadvertently, by testimony of a judge as to what she had in mind at the time of her decision. "Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and … interruption of its ordinary and proper functioning." *U.S. v. Dowdy*, 440 F. Supp. 894, 896-97 (W.D. Va. 1977) (internal quotation omitted) (quashing subpoena to federal judge where no "extraordinary circumstances" were shown to permit examination in the judge's decision-making process). In 1984, the Fifth Circuit, sitting *en banc*, applied this rule in a habeas corpus proceeding, noting that "it is a firmly established rule in our jurisprudence that a judge may not be asked to testify about his mental processes in reaching a judicial decision." *Washington v. Strickland*, 693 F.2d 1243, 1263 (5th Cir. 1982), reversed on other grounds, 466 U.S. 668 (1984). There are three "strong" policy reasons oft-cited for the rule against judicial testimony: 1) such testimony poses "special risks of inaccuracy" when there is a long passage of time because a judge would be "unlikely to be able to reconstruct his thought processes accurately," 2) the finality of judgments and integrity of court decisions "would be threatened by a rule that enabled parties to attack a judgment by probing the mental processes of a judge," and 3) in the habeas corpus context to permit parties to probe the mental processes of a state judge testifying years later in

federal court would exacerbate friction between the state and federal justice systems. *Washington*, at 1263.

As Judge Middlebrooks noted, in *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1347 (S.D. Fla. 2010), "[c]ourts have refused to allow a judge to testify in a subsequent proceeding as to the mental processes which he performed in deciding a case for several reasons, including unfair prejudice to the opposing party." *Id*. (citation omitted). In *Gonzalez*, the United States sought to introduce testimony from United States District Court Judge Cecilia Altonaga, who had presided over a suppression hearing, but had denied the motion to suppress as moot. The United States sought to establish, in a subsequent prosecution for perjury, whether Judge Altonaga was influenced by the allegedly false statements (the alleged perjury) of the defendants at the suppression hearing. Judge Middlebrooks applied Rule 403, Fed. R. Evid., and concluded that the "attenuated probative value" of Judge Altonaga's testimony would be "substantially outweighed by the danger of unfair prejudice." *Id*., at 1349. He noted that the testimony of Judge Altonaga would be speculative because she did not make a decision on the suppression motion, and "[i]f she [had made] a decision on that motion, *her testimony would be improper* for a host of other reasons." *Id*. (citation omitted) (emphasis added).

In *United States v. Frankenthal*, 582 F.2d 1102 (7th Cir. 1978), the court noted that calling a judge to give testimony in any proceeding is a "very delicate matter." *Id*., at 1107. In that case, a federal judge who had presided over the start of a case was called to testify during later proceedings in that case after he recused himself.

8

His testimony was deemed permissible because the judge was "the only possible source of testimony" regarding an *ex parte* meeting that he held early in the case with a person who later was a witness for the defense, and evidence of that meeting was required by the United States to prove that the witness was biased, and also because the judge gave only "brief and strictly factual testimony." *Id.*, at 1108.

Here, it is unknown whether Judge Pooler is the only source of information as to what was discussed at the plea colloquy involving this Defendant. No transcript of the proceeding is reflected in the state court docket.[4] It is unknown whether the state attorney or the public defender might be a source of information about what was discussed at the proceeding. In addition, it is clear that Judge Pooler is not the only source of information for at least two of the topics that the United States has identified: the effect of a no-contest plea, and the difference between misdemeanor and felony offenses. At this stage, the record does not support a finding that Judge Pooler is the only possible source of information. Also, the United States apparently intends for Judge Pooler to explain to the jury several general principles of criminal court proceedings, which far exceeds the type of testimony at issue in *Frankenthal*.

Judge Pooler should not be compelled to discuss her thought process in adjudicating a case because that has long been held to not be the proper subject of

---

[4]The United States has provided an Affidavit that the paper notes of the court reporter who transcribed the proceeding were "turned over to Apex Reporting" (ECF No. 66-1), and has represented that Apex Reporting advised the United States that the transcript cannot be produced.

compelled testimony. *See, e.g., U.S. v. Morgan*, 313 U.S. 409, 422 (1941), ("examination of [the mental processes of] a judge would be destructive of judicial responsibility"), citing *Fayerweather*. In addition, the subpoena should be quashed under Rule 17(c)(2), Fed. R. Crim. P., because for Judge Pooler to comply with the subpoena would interfere with her judicial duties.

WHEREFORE, Judge Pooler respectfully requests that this Court quash the subpoena and enter any such further relief as the Court deems proper.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 88.9, S.D. Fla. L.R., undersigned counsel certifies that she has conferred with Assistant United States Attorney Klepach in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

Respectfully Submitted,

ASHLEY BROOKE MOODY
FLORIDA ATTORNEY GENERAL

Barbara Junge
BARBARA JUNGE
Assistant Attorney General
Fla. Bar No: 993270
OFFICE OF THE ATTORNEY GENERAL
110 S.E. 6th Street, 10th Floor
Ft. Lauderdale, Florida 33301
Telephone: 954-712-4600
Facsimile: 954-527-3702
Barbara.Junge@myfloridalegal.com
Attorney for On-Party: Judge Pooler

## CERTIFICATE OF FILING

PURSUANT TO Rule 49, Fed. R. Crim. P., Local Rule 5.1(b), S.D. Fla. L.R., and Section 3.K.(4) of the CM/ECF Administrative Procedures of the Southern

District of Florida, I hereby certify that on February 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will generate a Notice of Electronic Filing to all counsel of record.

<u>Barbara Junge</u>
Barbara Junge
Assistant Attorney General
