UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-20497-DPG

UNITED STATES OF AMERICA

v.

SHARAD WILLIAM HOLLIE,

    Defendant.
_____/

### UNITED STATES OF AMERICA'S RESPONSE TO JUDGE TERESA POOLER'S MOTION TO QUASH SUBPOENA

The United States of America, through the undersigned Assistant United States Attorney, hereby responds to non-party the Honorable Teresa Pooler's, of the 11th Judicial Circuit of the State of Florida, motion to quash the subpoena issued to her by the United States on February 18, 2022 ("Attorney General's Motion"). Fed. R. Crim. P 17(c)(2) permits the Court to quash or modify the subpoena if compliance would be unreasonable or oppressive. The United States requests that this Court deny the motion to quash because 1) Judge Pooler's proposed testimony is relevant pursuant to FRE 403, and, therefore, not unreasonable in that regard, and 2) this Court can fashion reasonable accommodations for the witness so as to minimize any inconvenience. Judge Pooler is a witness in a federal criminal proceeding, and the same rules of evidence apply to her testimony as they would to any other witness. The government, contrary to the assertions in the motion to quash, has advised counsel for Judge Pooler numerous times that it does not intend to delve into the judge's mental processes when she adjudicated the defendant a convicted felon.

**BACKGROUND**

The Defendant has been charged with two counts of False Statement in Required Information Kept by Firearms Dealer, in violation of Title 18, United States Code, Section 924(a)(1)(a), and one count of False Statement to a Firearms Dealer, in violation of Title 18, United States Code, Section 922(a)(6). Based on discussions with the counsel for defendant, the gravamen of the defense is that the Defendant did not know he was a convicted felon when he twice tried to buy an assault rifle. There is no dispute that that the defendant pleaded no contest to an aggravated battery, a reduced charge from Attempted First Degree Murder, after he stabbed his grandfather in the abdomen. There is a certified conviction of same. This record only establishes that the defendant is a convicted felon, not that he knew he was.

Usually, the United States obtains a certified transcript of the defendant's change of plea hearing during which he would have been informed that he pleaded guilty to a felony. Unfortunately, the transcript is not available because of a technological issue with the court reporter's transcription software. The United States also, to no avail, conferred with the defendant's state probation officer to determine if the probation officer specifically explained to the defendant that he was a convicted felon. She did not. Having no other recourse, the United States sought to obtain the testimony of the Judge Pooler, who presided over the defendant's change of plea hearing, to explain the state process for change of plea hearings, what she typically advises defendants during the change of plea colloquy, and related matters, all in order to demonstrate to the jury that there was circumstantial evidence that tended to prove that the defendant, in fact, knew he was a convicted felon.

In January of this year the government communicated with the Eleventh Judicial Circuit's General Counsel's Office to determine if Judge Pooler had any recollection of the Defendant's

case. She did not. On February 18, 2022, the United States served Judge Teresa Pooler with a subpoena requiring her appearance at trial on February 23, 2022, to testify regarding her routine practices in conducting a change of plea hearing. On the same day, the United States explained to the General Counsel's Office, and Judge Pooler herself, the general areas the government intended to cover at trial. Those topics included the judge's plea colloquy practice, whether she advises the defendant of the class of charge they are pleading guilty to, and whether she informs the defendant of his or her sentencing exposure. The United States agreed, after inquiry by the General Counsel's Office, that it would not seek to elicit testimony regarding Judge Pooler's mental processes.

Later that day, the Florida Attorney General's Office informed the United States that its office would be representing Judge Pooler in the instant matter, not the General Counsel's Office. Also on that date, the United States furnished, at counsel's request, an entire copy of the court file for the defendant's underlying felony conviction, a proffer of proposed testimony for approval, and a copy of the court reporter's affidavit, which established that a copy of the plea colloquy transcript did not exist.

On February 21, 2022, the United States furnished Judge Pooler's counsel with a copy of proposed questions. The United States assured the Attorney General's Office that Judge Pooler's proposed testimony would not touch on matters relating to her mental processes. On February 22, 2022, the Attorney General's Office filed the instant motion, which seeks to quash the subpoena on the grounds that the subpoena is unreasonable and oppressive, and that Judge Pooler's testimony is irrelevant to proving the elements of the crimes charged. For the reasons set forth below, the motion does not provide a valid basis to quash the United States' subpoena.

## **LEGAL ANALYSIS**

### **A. Subpoena Compliance is Neither Unreasonable nor Oppressive.**

First the Attorney General's Office argues that the subpoena should be quashed because requiring Judge Pooler to comply with the subpoena would be unreasonable and oppressive in light of her judicial responsibilities. Although Fed. R. Crim. P. 17(c)(2) permits the Court to quash a subpoena if compliance with that subpoena would be unreasonable or oppressive for a witness, courts have denied motions to quash that stem from the witness' unavailability due to prior professional obligations. *See, e.g.*, *In re Kinroy*, 326 F. Supp. 400, 406-407 (S.D.N.Y. Dec. 28, 1970). In *Kinroy*, the Court reasoned that a subpoena requiring an attorney's appearance before the grand jury was not unduly oppressive. Though the attorney had a high-profile filing deadline and alleged that the subpoena presented an undue hardship and was "harassment," the court denied the motion to quash, reasoning that attorney's filing deadline, one month after the scheduled grand jury proceeding, was "far from any conceivably fatal oppression." *Id.* The court relied, in part, on the short nature of the witness' would-be testimony in denying the witness' motion. *Id.*

Similarly, here, Judge Pooler's proposed testimony is expected to be precise and without controversy. It concerns matters which everyone in the legal community knows, but to which jurors are not necessarily privy. Regardless of whether Judge Pooler recalls the actual script or not, the routine practice that she employed when presiding over the Defendant's change of plea hearing and the bare legal essentials of such a colloquy are undoubtedly indelibly etched in Judge Pooler's nomenclature given her years of service. It would stretch credulity to think that a judge with as much experience on the bench as Judge Pooler would not advise the defendants that are before her that they are pleading to felony or make sure that their decision to plead guilty was

4

knowingly, intelligently, and voluntarily.  The government anticipates a brief direct examination, and even shorter cross-examination.

Moreover, the government attempted to confer with the General Counsel's Office on February 18, 2022, regarding Judge Pooler's schedule and potential conflicts. The government informed Judge Pooler and counsel that the government would do its best to arrange with all parties, including this court, a time during the trial that would be the least inconvenient to the judge. Judge Pooler's Affidavit incorrectly presumes that the government is requesting that the judge take a significant amount of time away from her duties to testify at trial. Understanding that presenting a judge as a witness at trial is "very delicate matter," the government has made good-faith efforts to coordinate the judge's appearance so that it is neither "unreasonable" nor "oppressive." Fed. R. Crim. P. 17(c)(2).

**B. Judge Pooler's Testimony Will Not Address Her Mental Processes**

The government agrees that the law does not permit a judge to testify about her mental processes or decision-making. As described in its proffered topics of desired testimony, the government seeks only to question Judge Pooler about her standard plea colloquy in criminal cases.[1,2] The Attorney General's Motion alleges that inquiring about the judge's standard plea

---

[1] The Attorney General's Office takes issue with one line in the government's proffer—that the judge may need to testify as to the defendant's "state of mind at the time of the plea." To clarify, the government seeks to establish that the judge must have made a finding that the Defendant's plea was a knowing, willful, and intelligent choice.  In addition, delving into the Defendant's state of mind beyond that would not be necessary unless the Court permit the defense to collaterally attack the defendant's conviction by arguing that he was not competent at the time he entered his guilty plea. *See generally* DE 65.

[2] Judge Pooler's Affidavit states that her standard plea colloquy may change depending on developments in the law. This is exactly the point – the law requires judges to advise defendants of certain consequences of pleading guilty to felonies. Generally, judges advise defendants that they are pleading guilty to felonies, and that they will lose valuable civil rights in doing so. Judge Pooler's plea colloquy and whether it addresses those issues is therefore highly relevant to the issue in this case: whether the defendant knew he was a convicted felon.

practice involves a "high risk" that "the Judge's thought process about her decision to accept Defendant's plea would be revealed." A.G. Mot. At 5. First, the government seeks to put no more and no less of Judge Pooler's mental process before this jury than what Judge Pooler must publicly say at every change of plea hearing if she decides to accept a plea; to wit, that she finds that the Defendant knowingly, willfully, and intelligently made a decision to change his plea. The government's proposed questions, which were provided to the Attorney General's Office as a courtesy, do not at all address the judge's state of mind at the time she accepted the defendant's guilty plea. Moreover, both the Motion and the judge's Affidavit state that the judge has no independent memory of this defendant or his plea. It is therefore a factual impossibility that the judge would be testifying as to her mental processes because she has no memory of said processes.

Each of the cases relied on by the Attorney General in support of her motion are easily distinguishable from the instant matter. The Attorney General attempts to analogize this case to *United States v. Roth*, 332 F. Supp. 2d 565, 567-68 (S.D.N.Y. 2004), but in that case the defense (the party issuing the subpoena) sought to question the judge as a fact witness "regarding his mental processes in accepting Antonio Bryant's guilty plea." *Id.* at 568. Specifically, the subpoenaing party wished to question the judge regarding why he allowed Bryant to plead guilty to a lesser charge and why he imposed the selected sentence. Certainly, the court quashed the subpoena based on this representation by the subpoenaing party regarding the judge's intended testimony.

Similarly, in *United States v. Dowdy*, 440 F. Supp. 894, 896-97 (W.D. Va. 1977), the court quashed the subpoena to a federal judge because the subpoenaing party sought to elicit the judge's testimony with respect to the judge's basis for citing the defendant during prior contempt proceedings. *Id.* In that case, the court reasoned that the judge's contempt order already outlined the basis for citing the defendant and therefore there was no extraordinary need to call the judge

6

as a witness because the question that the judge's potential testimony would seek to answer was already contained within the order. In *Dowdy*, the judge had previously cited the defendant for contempt after she refused to answer certain questions on the ground that the defendant believed the answers would incriminate her. In a later prosecution for perjury, Dowdy sought to call the judge as a witness to establish that her contempt citation coerced Dowdy into testifying before the grand jury and waiving her Fifth Amendment right against self-incrimination. *Id.* at 896. Therefore, the Attorney General's reliance on the West District of Virginia's "extraordinary circumstances" language is misguided, in that this analysis presupposes that the content of the testimony will address the judge's thought processes during this defendant's guilty plea. That is simply not so.

Next, the Motion relies on *Strickland v. Washington*, 793 F.2d 1243, 1263 (5th Cir. 1982) in citing policy reasons militating against judicial testimony. In *Strickland* the court struck only the portion of the state judge's testimony where the judge explained his reasons for imposing the death sentence and his probable response to certain evidence. *Id.* In fact, the Fifth Circuit noted that "[t]he district court could properly consider that testimony to the extent that it contains personal knowledge of historical facts or expert opinion." *Id.* (internal citations omitted). In discussing the policy reasons against testimony from judicial officers, the court specifically noted that judges may not be able to accurately reconstruct their thought processes and that the integrity of judgments may be threatened. *Id.* Again, this analysis is wholly distinguishable from the instant matter, where the government seeks only to inquire about Judge Pooler's habit and custom with respect to plea colloquies. Thus, the Court should deny the Attorney General's Motion.

### C. Judge Pooler's Testimony is Relevant and Cannot Be Otherwise Replicated

Judge Pooler is the only source of testimony as to the relevant information discussed at the plea colloquy. Neither the prosecutor nor the defense attorney who handled the underlying prosecution can testify about the warnings given by a judge during a colloquy and how the judge ensures the defendant is made aware of the consequences of his guilty plea. *Compare* A.G. Mot. At 9 ("Here, it is unknown whether Judge Pooler is the only source of information as to what was discussed at the plea colloquy involving this Defendant.") Moreover, the United States has provided the Affidavit from the court reporter reflecting that the notes of the proceedings were destroyed and has represented to the court that the court reporting company also did not retain the transcripts. The Attorney General's reliance on *United States v. Frankenthal*, 582 F.2d 1102 (7th Cir. 1978) on this point is therefore mistaken. While the government agrees that calling a judge to testify is a "very delicate matter," *Id.* at 1107, A.G. Mot. At 8, the court in *Frankenthal* permitted the judge's testimony because it was "limited to a recitation of facts relevant to the jury's task of which. . .only he had knowledge." *Id.* at 1108. Similarly, here, no other witness could provide a factual recitation of the judge's standard plea practice.

Lastly, Judge Pooler's testimony directly addresses a defense that the government believes the defendant will raise, which is that the defendant did not know he was a convicted felon at the time he filled out the 4473 Forms. As the defense stated during the February 17, 2022, status conference, they will argue that the defendant did not know he was a convicted felon when he lied on ATF Form 4473. The government must prove that the defendant knowingly made a false statement when he filled out the form. 18 U.S.C. § 922(a)(6); 924(a)(1)(A). This makes Judge Pooler's testimony critical and highly probative. F.R.E. 403.

Indeed, Judge Pooler's testimony is the "most natural means" by which to establish that the defendant was likely advised that he would be a convicted felon after his plea. *See United States v. Johnson*, 25 F. App'x 231, 239 (6th Cir. 2001). In *Johnson*, the Sixth Circuit held that, absent a stipulation, a judge's testimony was the "most natural means" of establishing the crucial element of materiality in a perjury prosecution. In that case, the judge testified that the defendant's statements in a summary judgment motion affected his decision in denying the motion. *Id.* at 234-235. The court therefore permitted the testimony even when it invaded the judge's mental processes because it was the most natural means for the government to prove its case. *Compare United States v. Gonzalez*, 718 F. Supp. 1341, 1349 (2010) (excluding judge's testimony because probative value of testimony was attenuated). If Judge Pooler remembered the defendant, remembered the case, and could testify that she told him he was a convicted felon, there would be little doubt that this Court would not quash the subpoena. Here, the testimony is one step removed, as circumstantial evidence always is. The Court is going to instruct the jury that the law makes no distinction between direct and circumstantial evidence and that there is "no legal difference in the weight [the jury] may give to either direct or circumstantial evidence." Eleventh Circuit Pattern Jury Instructions, B4.

Here, the government seeks to admit the testimony for a very limited purpose—to establish that during Judge Pooler's standard plea colloquy practice she advises defendants that they will be convicted of a felony. Absent a stipulation, the government will be unable to prove this fact, which will significantly hinder its ability to prove the knowledge element of the crimes charged in the Indictment. The high probative value of the testimony substantially outweighs any risk of prejudice to the defendant.[3]

---

[3] Defense also argues in its response to the government's motion *in limine* (DE 67) that Judge Pooler's testimony should not be admitted because habit or custom cannot be relied upon to

9

## **CONCLUSION**

The United States respectfully requests that the Court deny Judge Pooler's motion to quash the subpoena, as it is neither unreasonable nor oppressive, her testimony is highly probative to the issues in this case, and the testimony would not touch upon the judge's mental processes.

Respectfully submitted,
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: _____
Arielle Klepach
Assistant United States Attorney
Court ID No. A5502706
99 Northeast 4th Street
Miami, Florida 33132-2111
Phone: (305) 961-3272
E-mail: Arielle.klepach@usdoj.gov

---

establish an element of the crime. The government does not seek to rely solely on Judge Pooler's testimony to prove that the defendant knew he was a convicted felon; however, her testimony is highly probative as to that fact.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2022, I electronically filed the foregoing document with the Clerk of the Court and served all counsel of record using CM/ECF.

    /s/ Arielle Klepach
Arielle Klepach
Assistant United States Attorney